UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES PETTUS,

                   Plaintiff,

      -v-

DEPUTY BARTLETT, et al.,

                  Defendants.

AMENDED[1]
DECISION AND ORDER
04-CV-6260 CJS

_____

APPEARANCES

For plaintiff:                  James Pettus, pro se
                              03-R-3597
                              Great Meadow Correctional Facility
                              Box 51
                              Comstock, New York 12821

For defendants:               Richard Benitez, Esq.
                              Office of the New York State
                              Attorney General
                              144 Exchange Boulevard
                              Rochester, New York 14614

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which the plaintiff, a prison inmate, alleges that defendants violated his federal constitutional rights. Now before the court is a motion [#70] to dismiss the complaint in this action pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendant Angela Bartlett. For the reasons that follow, the application is denied.

_____

[1]The original Decision and Order is being amended to delete the following language, that was inadvertently included in the last paragraph before the section entitled "Conclusion": "Defendants are directed to file and serve a summary judgment motion on or before April 30, 2007. In the event that no such motion is filed by that date, the Court will schedule this matter for trial." The parties are to ignore the April 30th date and adhere to the dates set forth in the conclusion of this Decision and Order.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, taken from the Amended Complaint [#65] in this action.  Plaintiff alleges that on May 11, 2004, while he was confined at Southport Correctional Facility ("Southport"), the Comptroller of the City of New York sent him a check in the amount of $650, apparently in settlement of a lawsuit of some type.  Upon receiving the envelope containing the check, addressed to plaintiff, a member of Southport's mail room staff opened the envelope, removed the check, and deposited the check into plaintiff's inmate account.  The mail room staff member then forwarded the check stub and a receipt to plaintiff.  Apparently, once the funds were deposited into plaintiff's inmate account, officials at Southport applied all but $129.03 of the monies to pay off various debts owed by plaintiff, including money owed to the NYS Department of Taxation and Finance, postage advances, and court filing fees. (Pl. Motion to Supplement [#20], p. 4).  This upset plaintiff, because he wanted to send the entire $650 to his family.

Plaintiff contends that the envelope containing the check was "legal mail," and therefore privileged mail, which should not have been opened outside of his presence.  In this regard, plaintiff cites New York Department of Correctional Services ("DOCS") Directive 4421, entitled "Privileged Correspondence," which states, in relevant part, that "privileged correspondence" includes   mail from the following: "*Government/public officials*.   Any American federal, state, or local government official, department or agency; any official of a nation, state, or tribe of which the inmate is a citizen; or the correctional association of New York State."  The Directive further states:

> Confidentiality.  Incoming privileged correspondence shall not be opened outside the presence of the inmate to whom it is addressed, and shall not be read without express written authorization from the facility superintendent.

2

*\*\*\**

> Inspection . . . . All incoming privileged correspondence shall be opened and inspected, in the presence of the inmate to whom it is addressed, for the presence of cash, checks, money orders, and contraband and to verify, as unobtrusively as possible, that the correspondence does not contain material that is not entitled to the privilege.

(Directive 4421 § B(1),(4)(b); *see also*, 7 NYCRR § 721.3 (detailing procedures for handling of inmate's privileged correspondence). Plaintiff filed an inmate grievance concerning the incident, which the Inmate Grievance Review Committee denied, responding as follows:

> As per Mailroom SMC memo dated 5/14/04: The envelope in question was received from the New York City Comptroller. The envelope is a window envelope and the contents are clearly a check. The only thing enclosed in these envelopes are checks and they are part of a class action settlement. They are opened, logged, and receipted in per Superintendent. The envelope and receipt are then sent to the inmate via Legal Officer. This is done to speed up the receipt and the mail is only handled once without having to be returned to the mail room.

(Pl. Supp. Aff. [#13]). The Superintendent of Southport, Michael McGinnis ("McGinnis"), affirmed the Grievance Review Committee's determination, stating that the opening of the mail was "in accordance to Directive 4422 III, G2." (Def. First Production of Documents [#31], p. 5).[2]

In this action, plaintiff contends that the incident at issue violated his First Amendment right to receive confidential legal mail. On that claim, plaintiff is suing DOCS "as a municipality," Michael McGinnis ("McGinnis"), the Superintendent of Southport, Angela

---

[2]In this regard, McGinnis apparently was indicating that the envelope containing the check was general correspondence, not privileged mail. *See, Davidson v. Goord*, No. 99-CV-555S, 2000 WL 33174399 at *6 (W.D.N.Y. Sep. 27, 2000) ("DOCS Directive 4422 contains and describes the policies and procedures governing the exchange of correspondence between an inmate and persons or businesses other than those approved for "privileged correspondence" under DOCS Directive 4421.").

Bartlett ("Bartlett"), Deputy Superintendent for Programs at Southport, Kathe Washburn ("Washburn"), the Mail Room/Correspondence Supervisor at Southport, and Mike Ames ("Ames"), identified as the "Grievance/Mail Room Person" at Southport. Plaintiff alleges that McGinnis is personally liable for this claim because, as Superintendent, he implemented a a policy of illegally opening inmates' privileged mail. Plaintiff contends that Bartlett and Washburn are liable on the claim because he complained to them about the situation, and they did nothing about it. Plaintiff contends that Ames is liable to him because he became aware of the allegedly illegal policy through his investigation of plaintiff's complaint, and failed to remedy the situation.

Subsequently, on or about May 24, 2004 ([#65] p. 11), plaintiff had officials at Southport issue a check in the amount of $120 from his inmate account, and send the payment to his family. However, some five months later, plaintiff's family apparently had not cashed the check, for reasons that are unclear. Someone at DOCS then stopped payment on the check. Plaintiff does not allege anything further about the funds involved, so it appears that, once payment on the check was stopped, the $120 was either placed back into his inmate account or was used to pay other outstanding debts. Nevertheless, plaintiff alleges that the stop payment order was retaliatory, and more specifically, that Bartlett stopped payment on the check in retaliation for plaintiff filing a lawsuit against her.

Plaintiff also contends that Bartlett and McGinnis "den[ied] [his] legal mail to go forward," and in that regard, he contends that Bartlett denied him "authorized advances" of postage. Specifically, the Amended Complaint indicates that on one occasion in April 2004, plaintiff attempted to mail unspecified legal mail from Southport, free of charge, and that Bartlett refused to approve an advance of postage unless plaintiff demonstrated that the

4

mailing qualified for such postage under DOCS Directive 4421. (*See*, Amended Complaint, Exhibits 8-12). In that regard, it appears, from the documentation that plaintiff has submitted as part of his complaint, that Bartlett demanded that plaintiff demonstrate his entitlement to an advance of postage under Directive 4421, since he had already used up his allotment of free postage for that week, as well as a $20 advance. Plaintiff contends that Bartlett's actions were "unconstitutional," and that he was entitled to free postage pursuant to DOCS Directive 2788. (*Id*. Ex. 12). Apparently, he also maintains that McGinnis is liable because he approved of the alleged constitutional violation. (Amended Complaint [#65] p. 12) ("So did Sup't McGinnis.").

Finally, plaintiff alleges that Bartlett, McGinnis, Washburn, and Ames conspired to violate his constitutional rights. (Amended Complaint [#65] p. 13) ("And together the above named defendants had an agreement between state actor and a private party to act in concert to inflict unconstitutional injury and put 'stop payment' which was an overt act doen in furtherance of that goal causing damages and injury to plaintiff and family.").

PROCEDURAL HISTORY

Because it is significant to the pending motion, the Court will briefly review the procedural history of this case. On June 8, 2004, plaintiff commenced the subject action against Bartlett, as well as against the "Mailroom/Correspondence Supervisor" at Southport. (Original Complaint [#1]). The original complaint in this action referred only to the incident involving the $650 check. On October 5, 2004, plaintiff moved to amend the complaint to add Washburn as a named defendant. (Motion to Amend Caption [#15]). On October 20, 2004, the undersigned referred this case to the Honorable Jonathan W. Feldman, United States Magistrate Judge, for the handling of all non-dispositive pretrial matters. On October

5

22, 2004, plaintiff moved [#20] to supplement his complaint with documents pertaining to his inmate account.  On November 3, 2004, plaintiff again moved [#33] to supplement his complaint, to add allegations that Bartlett and Washburn had a policy of opening other inmates' incoming privileged mail. On November 5, 2004, Magistrate Judge Feldman issued a Scheduling Order [#22] that set a deadline of December 31, 2004 for motions to amend pleadings, and a deadline of April 15, 2005 for filing dispositive motions.  Magistrate Judge Feldman further ordered, *inter alia*, that two of plaintiff's motions to supplement/amend [#15][#20] were withdrawn on consent, though plaintiff later indicated that he had not intended to consent to the withdrawal. (Motion for Re-Hearing [#24]).

On December 8, 2004, plaintiff moved [#30] for an extension of the deadline for motions to amend the pleadings.  Bartlett's counsel opposed this motion, arguing that amendment would be futile.  On December 23, 2004, Magistrate Judge Feldman denied plaintiff's attempt to amend, without prejudice to plaintiff submitting a properly supported motion to amend. (Decision and Order [#34].  The deadline for amending pleadings set by Judge Feldman expired eight days later.

Some five months later, on May 20, 2005, plaintiff filed another motion [#44] to amend the complaint.  The Court notes, though, that while the motion was not filed until May 20, 2005, the motion papers were dated much earlier. For example, plaintiff's Notice of Motion was dated as of January 31, 2005, and his proposed Amended Complaint was dated as of February 9, 2005.  In any event, as discussed above, the deadline for filing motions to amend was December 31, 2004.   On September 14, 2005, Magistrate Judge Feldman denied the motion to amend, finding that amendment would be futile, because the proposed amended complaint would not survive a motion to dismiss. (Decision and Order [#53]).

Specifically, Judge Feldman stated that, although plaintiff was attempting to allege a claim for conspiracy, he had not alleged an overt act in support of such a conspiracy, and also that a single instance of mail tampering would not survive a motion to dismiss pursuant to *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  For reasons that will become clear later, it is significant to note that Judge Feldman further stated that the time for filing dispositive motions had passed, and that the case was therefore ready to be scheduled for trial before the undersigned. (Decision and Order [#53], p. 3).  Plaintiff subsequently filed objections [#55] to Judge Feldman's order.

On December 2, 2005, the undersigned conducted a pretrial video-conference in this matter.  It is the Court's recollection that during that conference, the Court expressed surprise that defendant had never filed a dispositive motion against the original complaint in this action, since it appeared to allege only a single incident of mail tampering. Defendant's counsel indicated that he had only recently been assigned the case, and that while previous defense counsel had not filed a dispositive motion, he wanted the opportunity to do so, even though the deadline for such a motion had passed.  In its Decision and Order [#64] issued following the conference, the Court decided both to allow plaintiff to amend his complaint and to allow defendants to bring a dispositive motion.  With regard to amendment of the complaint, the Court ordered that the proposed complaint filed with plaintiff's motion to amend [#44] would be the operative complaint.  In this regard, the Court in effect granted plaintiff's objections to Magistrate Judge Feldman's decision denying his motion to amend. However, at the time the Court issued its Decision and Order, it misunderstood the reason why Magistrate Judge Feldman had denied the motion to amend.  That is, the Court was under the mistaken impression that Magistrate Judge Feldman had denied the motion

because it was untimely, not because amendment would be futile.  If the Court had understood the actual reason why Magistrate Judge Feldman had denied the motion to amend [#44], i.e., the proposed amended complaint was defective, it would never had ordered that the same proposed amended complaint be filed as the operative amended complaint.  In any event, the Court additionally ordered that defendants file any dispositive motion against the newly amended complaint on or before February 28, 2006.  The Court set this relatively short deadline for defendants to bring their motion, in the hope of expediting the matter, which was already several years old.

Two days after the Court issued its Decision and Order [#64] discussed above, it received from plaintiff another motion [#69] for leave to amend his complaint.  The "motion" stated, in relevant part: "I, James Pettus, . . . respectfully move this court to issue and order granting permission to amend complaint [sic] and why not??  And appointment of counsel.  Issues are novel!!"  Plaintiff did not give any explanation as to how he wanted to amend his complaint, nor did he submit a proposed amended complaint.  Plaintiff subsequently submitted two more requests [#73][#74], seeking to "supplement" his complaint with attached documents pertaining to two state-court proceedings in which plaintiff was suing various DOCS officials and employees.  Plaintiff stated that the documents supported his First Amendment right-of-access-to-courts claim, and he indicated that he would be sending additional documents relating to "eleven more" such cases, though he never did. ([#74], p. 1).  Finally, on March 20, 2006, plaintiff submitted another document [#78], in which he further explained his request to amend.  In the submission, plaintiff states, in relevant part:

> The defendants have denied plaintiff to make [sic] copies on advanced form (2708) pursuant to Directive 4483 as destituted [sic] inmate.  The defendants denied plaintiff to mail legal mail out on advanced form (2708) pursuant to

8

Directive 4421 causing in 2004, these article 78 petitions to be dismissed and again in 2005, 2006. Wherein, fifteen (15) Article 78 petitions were dismissed and federal complaints and appeals.

\*\*\*

I was singled out willfully, purposefully, methodically, systematically, structured, planned and designed with 'intent' to cause harm and injury to plaintiff as well as other destitute inmates at Southport Corr. Facility. This is a pattern, practice, policy and more importantly custom  that is followed by officials at Southport Corr. Facility which is violative of rules, regulations, directives and laws created by 'D.O.C.' and insults the 1st Amendment 'freedom of speech' 'right to be heard' 'access to the courts' and 'free flow of mail.'

\*\*\*

[Defendants] would invidiously and maliciously hold plaintiff's mail for more than two (2) weeks causing injury by having petitions dismissed for failure to comply with court-mandated-dead-line.  By holding legal mail unnecessary [sic] and needlessly, causing four (4) Article 78 petition(s) and one (1) federal complaint to be dismissed.

\*\*\*

Then plaintiff was [sic] to Elmira Corr. Facility and again received IMR and transferred back to Southport Corr. Facility where defendants once again singled-out plaintiff willfully, purposefully, methodically, systematically, structured, planned and designed with intent to impede plaintiff's access to the courts and free flow of mail.  By intentionally, invidiously and maliciously denying plaintiff to make copies on advance form (2708) to serve respondents atty general and defendants or to mail out on advance form legal mail violating directive 4483 and 4421 as plaintiff is destituted causing fifteen (15) Article 78 petitions to be dismissed and three (3) federal complaints and two (2) court of appeals cases to be dismissed again disturbing and insulting the First Amendment.

([#78], p. 11, 12, 14).

On February 28, 2006, defense counsel filed the subject motion to dismiss.  In this regard, although at the conference held on December 2, 2005 discussed above, the Court fully intended and expected, due to the status of the case, that the "dispositive motion" that defense counsel would bring would be a summary judgment motion, defense counsel instead filed a motion to dismiss pursuant to Rule 12(b)(6). (*See*, Notice of Motion [#70]). Additionally, defense counsel filed the motion only on behalf of Bartlett because the other

defendants named in the Amendment Complaint, i.e. – DOCS, McGinnis, Washburn, and Ames – had not yet been served.[3] (*See, Id.*) ("The only served defendant is Bartlett and is represented by this office; however, by this motion this office acts solely on limited authority and does not represent the unserved defendants DOC [sic], McGinnis, Washburn or Ames."). Although these other defendants were served subsequently, they never joined in Bartlett's motion.

With this procedural history in mind, the Court will proceed to consider the merits of the subject motion to dismiss [#70].

### ANALYSIS

Bartlett has moved to dismiss the Amended Complaint pursuant to Rule 12(b) (6). It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). While the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Moreover, ""when the plaintiff proceeds *pro se*, as

---

[3]The Court was not aware of this fact when it set the relatively short deadline for filing a dispositive motion.

in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citation omitted).[4]

On a motion to dismiss pursuant to Rule 12(b)(6), the Court's "consideration is limited to the factual allegations in plaintiff['s] ... complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993)(*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).  In the *Cortec* decision, the Second Circuit stated, in relevant part:

> [W]e have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference [documents] upon which it solely relies and which [are] integral to the complaint, the defendant may produce [the documents] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of his own failure.

*Cortec Industries Inc. v. Sum Holding, L.P.*, 949 F.2d at 47.  In the instant case, the Court finds that, in resolving the subject motion, it may consider not only plaintiff's Amended Complaint [#65] in this action, but the documents attached to it, as well as documents which he clearly had in his possession and relied upon in drafting his Amended Complaint, such as the DOCS directives discussed herein.

Turning to the substantive claims in this action, plaintiff contends that Bartlett violated

---

[4]Plaintiff is a frequent *pro se* litigator, having commenced nine actions in this district since 2004. Nonetheless, because he is proceeding pro se, the Court will construe his complaint liberally, to raise the strongest arguments that it suggests.

his First Amendment rights by: 1) implementing and/or failing to correct an unconstitutional policy and practice of opening privileged inmate mail, outside of inmates' presence, to remove checks; 2) retaliating against him by stopping payment on a check sent to his family; and 3) denying him access to the courts by refusing to provide him with postage for outgoing legal mail.  Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Moreover, "[t]o prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

As for plaintiff's First Amendment "free speech" mail claim,

12

> [u]nder the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail." *Id*. A prisoner's right to receive and send mail, however, may be regulated. *See Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir.1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail). Such regulation " 'is valid if it is reasonably related to legitimate penological interests.' " *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987) (*quoting Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

*Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006).  To state a valid First Amendment "free speech" claim involving incoming legal mail, the plaintiff must allege that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Davis v. Goord*, 320 F.3d at 351 (citation omitted).  However, the Second Circuit has held that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id*., 320 F.3d at 351; *see also, Id*. ("[D]istrict courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face.").

DOCS Directive 4421 establishes regulations pertaining to inmate's privileged correspondence.  As discussed above, Directive 4421 states, in relevant part, that "privileged correspondence" includes mail from the following: "*Government/public officials*.  Any American federal, state, or local government official, department or agency; any official of a nation, state, or tribe of which the inmate is a citizen; or the correctional association of New York State."  With regard to incoming privileged correspondence, Directive 4421 states that

13

"[i]ncoming privileged correspondence shall not be opened outside the presence of the inmate to whom it is addressed, and shall not be read without express written authorization from the facility superintendent."   The Directive additionally states that all such correspondence "shall be opened and inspected, in the presence of the inmate to whom it is addressed, for the presence of cash, checks, money orders, and contraband and to verify, as unobtrusively as possible, that the correspondence does not contain material that is not entitled to the privilege."   Moreover, the directive states that "[w]hen, in the course of inspection, cash, checks, or money orders are found, they shall be removed and credited to the inmate's account." (Directive 4421, § III(B)).

Plaintiff is also asserting a First Amendment "denial of access to the courts" claim. Where an inmate is alleging such a claim, based upon alleged interference with outgoing legal mail, to survive a 12(b)(6) motion he must "allege that defendants took actions that actually hindered his efforts to pursue a legal claim or otherwise prejudiced his legal action." *Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (citation and internal quotation marks omitted); *Lewis v. Casey*, 518 U.S. 343, 349, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Holding that, to state a valid access-to-the-courts claim, a prisoner must allege that the prison officials' deliberate and malicious interference resulted in "actual injury.").  Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. at 354, 116 S.Ct. at 2181.  Instead,

> access-to-court, as a Constitutional right, only applies to prisoners' lawsuits that seek 'to attack their sentences directly or collaterally, [or] to challenge the conditions of their confinement.' The right does not extend to cases unrelated to the fact, duration or conditions of a prisoner's confinement, for example, 'shareholder derivative actions [or] slip-and-fall claims.

*Arce v. Walker*, 58 F.Supp.2d 39, 44 (W.D.N.Y. 1999) (quoting *Lewis v. Casey*, 518 U.S. at

14

355, 116 S.Ct. at 2182).

Here, plaintiff contends that Bartlett denied him access to the courts by unjustifiably refusing to advance him postage for use in sending out legal mail. This DOCS Directive 4421 provides for weekly limited free postage for outgoing legal mail, and contains a provision for advances for inmates who have exceeded their allotment of such free postage, as follows:

> Advances for legal mail. To ensure that indigent inmates maintain their right of access to the courts, the facility shall approve an IAS 2708 advance request to pay for first class mail postage if the inmate has insufficient funds and if the following conditions are met:
>
>> (1) the mail is legal mail (e.g. it is addressed to a judge, clerk of court, attorney, or authorized legal representative; or is related to a potential or ongoing legal matter);
>>
>> (2) any balance of the inmate's free weekly postage allowance is applied to the legal mail postage costs; and
>>
>> (3) the requested advance and the balance of unpaid previous advances for legal mail postage do not exceed $20.00.
>
> ***
>
> *Exceeding the $20.00 limit shall only be approved if the inmate can show by court rules, a statute of limitations, or other legal deadline applicable to his or her individual circumstance that the legal mail must be sent prior to receipt of the next week's free postage allowance. The inmate must provide justification for such advance.*

(DOCS Directive 4421 dated January 21, 2000, as amended) (emphasis added). Directive 4421 has been upheld as Constitutional. *Gittens v. Sullivan*, 670 F.Supp. 119 (S.D.N.Y. 1987), *aff'd* 848 F.2d 389 (2d Cir. 1988).

As for plaintiff's contention that Bartlett unjustifiably stopped payment on a check sent to his family, in retaliation for his having filed a lawsuit against her, the standard for such a claim of retaliation is well settled: "[T]o sustain a First Amendment retaliation claim, a

prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations omitted).  In the prison setting, "adverse action" is defined "objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Id*. at 381 (citation and internal quotation marks omitted).

Based upon the applicable legal principles, the Court finds that Bartlett's motion to dismiss must be denied.[5]  Based upon all of the facts and circumstances discussed above, the Court cannot say, beyond doubt, that plaintiff can prove no set of facts in support of his claims which would entitle him to relief.[6]

Unfortunately, the case is now only slightly closer to resolution than it was in December 2005.  Moreover, it still appears that some, if not all, of the claims would be subject to resolution on a summary judgment motion.  Accordingly, in the interests of judicial economy, the Court will allow plaintiff to amend his complaint, as described below, and will allow defendants to bring a summary judgment motion against the complaint as modified. As for the amendment, the Amended Complaint [#65] is hereby amended to add the specific

---

[5]The Court notes that Bartlett's motion papers only refer to the alleged constitutional violation concerning the handling of the $650 check, and a claim of conspiracy involving that same incident. (Def. Memo [#71] p. 3) ("Plaintiff's one-time receipt of non-legal mail containing a $650 check that was simply deposited into his inmate account clearly does not arise to the level of a constitutional violation.  Since plaintiff cannot assert a constitutional violation, there cannot be any recognizable conspiracy in furtherance of a non-existent violation.") Bartlett's motion does not discuss the retaliation or denial of access to the courts claims.  Moreover, although the opening of the envelope containing plaintiff's check was a "one-time" event, he alleges that it was pursuant to a policy instituted by McGinnis.

[6]To the extent that this determination is in any way inconsistent with prior rulings in this case, either by the undersigned or by Magistrate Judge Feldman, the Court nevertheless believes, after an exhaustive review of the docket, that it is correct based upon the facts now set forth above.

supplemental allegations, contained on pages 11, 12, and 14 of plaintiff's submission [#78] submitted on March 20, 2006, set forth above.  Specifically, the Amended Complaint [#65] is hereby amended to add, as part of the denial of access to the courts claim, the allegation that some or all of the defendants wrongfully denied plaintiff photocopying and postage advances, and delayed in mailing his outgoing legal mail, which resulted in 25 of his lawsuits being dismissed.

CONCLUSION

The Motion to Dismiss [#70] is denied for the reasons stated above.  Motions [#68] [#96] and [#97] are also denied, as moot.  The Amended Complaint [#65] in this action is amended to add the allegations set forth on pages 11, 12, and 14 of plaintiff's submission [#78] submitted on March 20, 2006, as described above.  Any additional discovery shall be completed by June 19, 2007.  Summary judgment motions shall be filed and served by July 19, 2007.  In the event that no summary judgment motion is filed by that date, the Court will schedule this matter for trial.

So Ordered.

Dated:        Rochester, New York
              March 23, 2007

                                    ENTER:


                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge